May it please the Court, my name is Kristen Henry and I represent the appellants, the Sierra Club and the Sierra Nevada Forest Protection Campaign. I would like to reserve five minutes for rebuttal. The issue on appeal is whether the Forest Service's promulgation of the fuel's categorical exclusion was in violation of the National Environmental Policy Act and the Administrative Procedure Act. At the outset, I would like to make clear that the appellants support hazardous fuel reduction. The issue in this case is whether this hazardous fuel program is in compliance with the law. There are many issues that were addressed in the case, and I would like to make clear that the appellants support hazardous fuel reduction. The issue in this case is whether the Forest Service's promulgation of the fuel's categorical exclusion was in violation of the National Environmental Policy Act. The issue in this case is whether the Forest Service's promulgation of the fuel's  adequately consider the cumulative impact that could be had throughout the United States by the CEE fuel, or fuel CEE, that is issued. Yes. Suppose we were to make that decision. Yes. Because there – if we were to conclude that there was insufficient consideration of the cumulative impacts, does that win the appeal for you, or do we have to consider other things as well? Your Honor, that wins the appeal for us. And NEPA's implementing regulations state that a categorical exclusion is a category of actions that have no individual or cumulative significant impacts. The regulations then go on to place an affirmative obligation on the agency to determine that that category of actions will have no such impact. Now, the Forest Service has not done that for this case, which means that we have to go through the process. And that's a preliminary to making the decision to use a categorical exclusion. Your Honor, we also make that argument. That's an additional argument, however. That's a separate argument. Under 40 CFR 1508.4, an agency has to determine that this category of actions will have no cumulative significant impacts on the environment. For this case, the agency has not done an adequate analysis. What the Forest Service did is they looked at each project individually. And after looking at each project individually, they said, since individually there was no significant impacts, there would be no significant impacts from the category as a whole. And this is an inadequate cumulative assessment. I think their argument was that just because there would be a lot of these events occurring across the United States, if each one is insignificant for its effect on the human environment, just because you had a lot of insignificant events would not make them cumulative, impacting the human environment. I think that's their argument. Yeah. And I would have to disagree, because the definition of a cumulative impact is when you take the incremental impact of an action, when added to other past, present and reasonably foreseeable future actions. And it states that an individually minor action can have a significant action as a collective whole. In this case, if you just look at the individual projects and focus on the significance of individual projects, you're missing the macro level analysis that's required for cumulative assessment analysis. Counsel, I'm not sure I've got this right, but it looked to me as though the Forest Service did consider cumulative impact. They analyzed the effect of the 2,500 fuel reduction projects, ranging from one acre to 90,000 acres, urban tree trimming to clearing and preventive fires in larger forests. The whole thing nationally is 2.5 million acres, which is less than half the size of one summer fire in Alaska. Or, yes, Your Honor, the agency did a data call, and in the data call there was So it looks like they have their judgment, your organization has its judgment, and unless theirs is arbitrary and capricious, how can we substitute your group's judgment? The agency's decision was arbitrary and capricious because they never analyzed the collective impact of the fuel CE as a whole. What I'm asking you is didn't they analyze it and just disagree with your view of it? They did not analyze the cumulative impacts as required by NEPA. What they did is they looked at each project individually and individually determined if there would be a significant impact. They never did a macro-level analysis. They didn't look at the impact of implementing this project nationwide. In fact, they didn't even look at the impact of implementing this in one particular national forest, in one given ecosystem, in one given state. They simply did no analysis of this as a whole, and that is inadequate. The definition of a cumulative impact is something that could be individually minor but collectively significant. My second point that I would like to make is that the Forest Service setting of a category of actions, that the fuel CE will have a significant impact on the environment. Now, if a categorical exclusion is a category of actions that will have no significant impact, the Forest Service stated that the whole purpose of the fuel CE is to expeditiously reduce hazardous fuels, thereby reducing the intensity and spread of wildfire. The Forest Service does not have it both ways. They cannot on one hand say, we're expeditiously going to reduce hazardous fuels, but on the other hand – I'm sorry, I couldn't hear some of your words. The room is – Sorry. And they can't have it both ways. They can on one hand say that they're going to expeditiously reduce hazardous fuels, but on the other hand say there will be no significant impact on the environment. Now, this court in West v. Department of Transportation dealt with a similar issue. In that case, the Department of Transportation tried to invoke a categorical exclusion that could only be invoked if there would be no significant impact on travel patterns. In that case, the Department of Transportation said that a new highway interchange would on one hand have no significant impact on travel patterns, yet on the other hand significantly reduce traffic congestion. The court said you can't have it both ways. And that's a similar argument that the Forest Service is making here. They're saying, we're going to implement this program that will reduce hazardous fuels nationwide, yet at the same time have no significant impact on the environment. The two are mutually exclusive. Why – if I understood the scheme correctly, if there's a categorical exclusion, then instead of going through the environmental assessment, environmental impact statement procedure, the agency goes through the counsel on environmental quality procedure, consultation and approval from – I think it's called the CEQ. Is that right? I would tend to differ a little bit, Your Honor. The environmental assessment process is also an – is also a counsel on environmental quality procedure. And the environmental impact statement, they're all – they're all procedures that are implemented under NEPA. And I don't see that there is a difference in them. In addition, the fuel CE will have a significant impact on the environment. So you think Hartwood, the Seventh Circuit decision, is just flat wrong? Your Honor, I – frankly, yes. The Seventh Circuit got it wrong. That's the only circuit that's spoken on it, is that right? On this issue, yes, Your Honor. And we can address that issue if you like. So what we would be doing is setting ourselves up for cert on this issue by disagreeing with the Seventh Circuit. I think that there's a way that you don't have to disagree with a sister court. Number one, the fuel CE is different than the small timber categorical exclusion, which was at issue in Hartwood. Number one, the small – just based on the size, the fuel CE impacts 1,000 acres to 4,500 acres of our national forest, whereas the small timber CE only dealt with 250 acres. So this is a greater magnitude of project. In addition, for the small timber CE that was at issue in Hartwood, that case had an extraordinary circumstances provision that acted as a safety net, because as soon as an extraordinary circumstances provision was – resource condition was present, then they could not invoke the categorical exclusion. That operated as a safety net against significant impacts. And number three, the Forest Service did not state that the purpose of the small timber CE was to have a significant impact on the environment. So I don't think – You've got an underlying problem with this argument. Yes. We've had some real forest fires in Alaska, and they have in the rest of the country too, notable ones. Congress decided to do something about it. Five million acre forest fire for us is not extraordinary. The whole State is covered with a haze. People are injured and die fighting these fires. People lose their cabins and everything they own. If I understand what you want, there could never be a program where the Forest Service quickly moves during the spring to stand and to do controlled burns in order to prevent those kind of forest fires. And it's not just Alaska. They even had them in Arizona. I had thought that would just stand there, but evidently not. Your Honor, I would disagree. What we're asking for is, is this – the appellants support hazardous fuel reduction. All we ask is that the hazardous fuel program be in compliance with the law. Now under NEPA, if there is a major Federal action that may impact the human environment, an agency must prepare either an environmental assessment or an environmental impact statement. In the end, they can adopt the same category of exclusion that they have now. They just need to follow proper NEPA procedure in order to get to that point. Under the plain language of NEPA, a major Federal action is defined as a new or revised agency rule, regulation, plan, policy, or procedure. Now in this case, the appellees concede that this is a NEPA procedure. They do that on page 15 of their brief. A procedure falls within the plain meaning of a major Federal action. Once you have a major Federal action, you must determine if it can impact the human environment. In this case, the fuel C unquestionably will impact the human environment. Under this nationwide program, 1.2 million acres of our national forest will be logged and burned every year. That means over a decade, 12 million acres of our national forest will be impacted. In addition, it changes the status quo. For 25 years, the Forest Service prepared environmental assessments and environmental impact statements before moving forward with these types of projects. However, they've revised their procedures to now say that they're going to be categorically excluded. Under this Court's holding in Kootenai Tribe of Idaho v. Venoman, this has changed the status quo. It qualifies as a major Federal action. So at a minimum, the Forest Service must prepare an environmental assessment. So this Court does not even need to reach the issue of whether the fuel C will have a significant impact on the environment, because the agency had an affirmative obligation to at least issue an environmental assessment in a finding of no significant impact. Getting to my second point, Your Honor, the agency has compared apples and oranges. The agency did this in two ways. First, the projects analyzed by the Forest Service in the data call had environmental assessments and environmental impact statements performed for them, while projects authorized by the fuel C will not. And this, in a sense, is comparing two different projects. This issue was raised by U.S. Fish and Wildlife Service and by the Arizona Fish and Game Department. Now, the Forest Service did not respond to this in their response to public comments and did not address this issue in its brief. But what these agencies noted was the fact that when a project has an environmental assessment or an environmental impact statement, a project is often found to have no significant impact on the environment because mitigation measures were implemented for an alternative project that meets the project's objectives while minimizing impacts on the environment was chosen, while projects authorized by the fuel C will not have the privilege or the honor of having this analysis, so the two are incomparable. The net effect of the fuel C is to bypass the step where the agency considers how they can reduce environmental impacts. There will no longer be a mitigation measure analysis or an alternatives analysis, so these projects are incomparable with those that were authorized by the fuel C. In addition, the Forest Service never gathered any information about what mitigation measures, how to be implemented. Could you back up to something for me? Of course. I'm still not past it. There's this letter from the Council on Environmental Quality to the Secretary of the Interior and the Secretary of Agriculture, and it says these activities at 548 will not individually or cumulatively create a significant impact on the environment and therefore do not require additional NEPA analysis and documentation. Is it cut and dried that unless we can say that determination is arbitrary and capricious, we defer to it both on the individual analysis and the cumulative analysis? Your Honor, the Council on Environmental Quality is not due any deference, and that's because their opinion contradicts the plain language of NEPA's implementing regulations. Under the U.S. Supreme Court holding of Robertson v. Citizens of Methel Valley, the Supreme Court stated that if an agency's opinion is contrary to the plain language of NEPA's implementing regulations, it's not due any deference. In this case, Seek's opinion is contrary to the plain language. Show me which plain language it's contrary to. I looked in the regs, and I couldn't quite see it. The NEPA's implementing regulations require an agency to prepare an environment We probably all three have them right in front of us here, so just point to the subsection. You would have to go to 42 U.S.C. 4332, which states that I was looking at 40 C.F.R. 1508. That's not what you mean by the regulations? I was going to start higher and say that you have to prepare Okay, 4332. Got it. Okay. An environmental impact statement must be prepared for a major Federal action that will significantly impact the human environment. A major Federal action is defined in NEPA's implementing regulations as 40 C.F.R. 1508.18. That defines a major Federal action as new or revised agency rules, regulations, plans, policies, or procedures. Once you have a plan, policy, procedure, or rule or regulation that will impact the human environment, the agency has two options. Number one, it can issue an environmental assessment and a finding of no significant impact, or it can prepare an environmental impact statement. In this case, the agency has done neither. And these are in the plain language of NEPA, NEPA's implementing regulations, and the statute itself But I thought we were supposed to look at 1508.4, which says as a matter of regulation that a categorical exclusion means a category of action which does not affect individually or cumulatively have a significant effect on the human environment. So that means you don't need the environmental assessment or environmental impact statement if it's a categorical exclusion. You just need CEQ to approve that it is one. Your Honor, there's two sep -- I would disagree. There are two separate obligations under NEPA. Number one, the agency has an affirmative obligation to determine that this category of actions will have no significant impact on the environment, both individually and cumulatively. And that is located at 40 C.F.R. 1508.4. There is a separate obligation that an agency, that if they have a major Federal action, which the fuel CE qualifies as, then you also must prepare either an EA or an EIS if it will impact the human environment. They are two separate requirements, and both have not been met here. Roberts. Thank you, counsel. May I add a question here? Of course. It's Ms. Russell, is that right? Ms. Henry. Pardon me? Ms. Henry. Ms. Henry. Oh, I'm sorry. I'm on the wrong case. Ms. Henry, right. Let's suppose that, as I said earlier, that we were to agree that there was an insufficient consideration of the cumulative impacts, if that happened to be our case. And we'd say then that the categorical exclusions were wrongfully developed, if you would, for better word, I guess. Then what would we do? We'd remand, I suppose, to the district court for an injunction or something requiring the Forest Service to do what? And suppose we assume not an EIS or an EA or a FONSI. Yes. Then what would we require the Forest Service to do? We would require them to do a cumulative impacts analysis that would meet NEPA's requirements. Cumulative impact analysis. Cumulative impact analysis. In this court, in Kalamazoo Sioux Wildland Center v. BLM, stated that an adequate cumulative impacts analysis should give a quantified assessment of the collective impact. In this case, there has been no quantified assessment of the cumulative impact of this action. Are you talking about the diameter of the trees and that sort of thing that would be taken down? A cumulative impact analysis would look at all of that. Impacts on fragmentation of wildlife habitat. Impacts on watersheds and water quality. Many different impacts would be incorporated into that. Okay. In addition, the FUEL-CE, the Forest Service decision that the FUEL-CE is arbitrary and capricious because the whole basis for the categorization is unsupported. In this case, the Forest Service stated that there is no correlation between acreage and impacts. Acreage and significant impacts. Therefore, making the basis of the categorical exclusion on acres is the definition of arbitrary and capricious. Counsel, I know you wanted to save five minutes. Sure. We'll give you a minute or two anyway. Thanks. Thanks, John. If any of my colleagues have questions for you, though, before you sit down. No. We'll think about them. We'll try to think about them and get them up for the next time. May it please the Court, I'm Lisa Jones from the Department of Justice for the United States Department of Agriculture. I didn't get your name. Was it? Lisa Jones. Lisa Jones. Thank you. I apologize. I have come up with some kind of ailment traveling here, so my voice is a little hoarse. It's an eastern illness. We don't have them out here. I want to take a step back, if I might, because there have been some fundamental misconceptions this morning about the nature of categorical exclusions generally and the nature of the FUELS CE specifically. Categorical exclusions are not, as my opponent put it, a nationwide program. Could you do me a favor? Every time it comes into your head to say CE, instead say categorical exclusion. I find English an easier language. Yes, Your Honor. Categorical exclusions are not nationwide programs. They are not a FUELS reduction program. A categorical exclusion is a procedural mechanism for determining if there is a certain category of actions in the land manager's expertise where they have done EA and FONSI after EA and FONSI after EA and FONSI, and they've figured out that there is a way that they can put together some parameters to determine that they can do different NEPA analysis for projects that occur in the future. They don't dictate management practices. Categorical exclusions don't manage lands. They don't say, hey, we're going to do 50 projects or we're going to do 100 projects. They just provide a procedural mechanism for what type of NEPA document will be prepared for a limited parameter of projects. So when I hear things like a nationwide program implementing this project it is a procedural mechanism. Every hazardous fuels project that will go forward in the future, whether under this categorical exclusion or if it falls outside of the categorical exclusion, will receive analysis by the Forest Service. Every proposed action the Forest Service But not a cumulative analysis. Well, actually, if you look at the projects that they challenged here, there is cumulative effects analysis within the decision memos and the biological assessments and biological evaluation. They could, but not necessarily a cumulative analysis. I think the complaint seems to be that even though perhaps agreeing with the Seventh Circuit for the moment, just as a baseline, we accept Hartwood, that even so there might be a federal action that would involve a cumulative impacts analysis before promulgating a CE of this magnitude. Respectfully, Your Honor, I don't know exactly what type of cumulative impacts analysis you could do when you don't know the parameter of the projects that are going to come up. So why did you say in your brief that you had done a cumulative impacts analysis? I just have a note from your red brief where you say that on 29, the service reasonably determined that the fuels CE will not lead to cumulatively significant impacts. That's right. So how did you make that determination and what supports it in the record? Because the Forest Service went back and looked at two full years, every single hazardous fuels project that they had undertaken for two full years, and the Department of the Interior did it for one full year and then looked further back. They looked at the entire database, and it's incorrect to suggest that all of these were done with environmental assessments. That's not true. No, no, I'm not suggesting that. But your brief suggested you did a cumulative impacts analysis and determined that these projects. Just let me finish. I'm not trying to argue with you. I just want to get a question out, and you can straighten me out if I've strayed. But it seemed to me when you say in your brief that we've done a cumulative, there's no cumulative impacts. But as you look at the record, there doesn't seem to be any cumulative impact analysis for the CE as we would normally have seen that. And, for example, in the memos you're describing about these specific properties. Right? The question for developing a categorical exclusion is whether you can find a subset that has been found typically not to have significant impacts, either individually or cumulatively. Right. But as we know from the Forest Service, if you look at Alaska, it's different from Montana. It's different from California. We have all sorts of them. This was a nationwide categorization based on some data. It's not a nationwide categorization. It is a procedure that was developed based on an analysis that did occur nationwide. So why is that not a nationwide analysis? It impacts nationwide? It doesn't impact nationwide. The categorical exclusion has no impact itself. It is merely a procedural mechanism. Well, it's implemented. Oh, no, no, no, no, no. It's the projects that might have impacts. The categorical exclusion has no impacts. In fact, the record demonstrates that the Forest Service already had. I mean, the status quo didn't change much for the Forest Service. The purpose of this particular categorical exclusion was trying to get all of the Federal Land Management Agencies in line and to have a similar categorical exclusion. The record is too big to use easily. Could you, if you could put an indented quote from the record showing that the right sort of analysis, whatever analysis is appropriate to cumulative impact, was accomplished, what page of the excerpts would you use for that? Can I ask you one question before I give you? No. Just give me a page of the excerpts. I would point you to the excerpts. It's not an ambiguous statement that we've had some misunderstanding on, on page 29 of the red brief. I had thought that the Forest Service basically said we have analyzed cumulative impact and it's all right. And now I understand them to be saying we don't have to analyze cumulative impact because the impact is from the projects, not from the procedure. I don't know anymore. And then I'm told to look at the record. Well, I can't look at the record. It's thousands of pages. So tell me where to find what it is that you want me to look at in the record. Well, if you would like, the one place I would, the one report you might want to read is at excerpts of record 250. Maybe you could even give me a page. Excerpts of record 250. It's, I mean, it's. That's where the report begins, right? 250 to 259. It's a description of how the Forest Service went about analyzing the data to determine that this specific subset of hazardous fuels projects are of the sort that do not cause individual. Okay. Are you going to do any better than answering a question with a question or are you going to give me an answer? I'm sorry. I thought I did. Something you would like quoted? I don't know if I can give you something I would like. Okay. That's all right. I'm not sure. Look, you just get an opportunity to address these concerns. You don't have to take it. Well, let me see if I can take it a different way. It looks to me as though there was not any data provided to support. You referenced the call data. You referenced today the analysis. But I don't see the analysis anywhere in the record. I see a summary and references. But, for example, if I were to look at the record and say, well, all right, show me the methodology by which you determined, you made your precise determinations of the CE, I don't see it. I see in the pages you're talking about, 255 to 259, there's nothing specific. It's just a reference to that we've analyzed the data. Where's the data? The data is there. In fact, one entire volume, it's not very easy to see, I think it was volume four of the appellant's excerpts, has what is actually an enormous spreadsheet. Well, it's a spreadsheet, but I guess what I found missing, and maybe you can help me out with this, is any analysis that would translate. You have data on one hand. You have a representation we've looked at the data, on the other hand, and the excerpt of record which you've referenced, 255 to 259. But I don't see the methodology of the analysis, a discussion of the analysis. All I see are conclusions in there. Am I missing a fundamental analytical piece that's in the record? I think that the report that I cited you to is a synthesis. It is. But it has conclusions, not necessarily an analysis of the data, as I've seen in other reports in the Forest Service. I'm just comparing, trying to compare apples to apples, where there is a here's the raw data, here's the analysis, and here's our conclusions. I see conclusions, but I don't see the analysis. Am I missing something? I guess I do read that report and other reports in the record as providing some analysis. Also, the Federal Register notices themselves both the original proposed categorical exclusion and then the final categorical exclusion goes through in some detail how the Forest Service went about determining the projects, how it looked at the, excuse me, projects that were both a number of thousands that were categorically excluded, some that were prepared with environmental assessments and others that were prepared with environmental impact statements and tried to determine where, in fact, there had been significant on the ground impacts and then tried to develop the parameters for the categorical exclusion based on where they found significant impacts. And importantly, they found only 12 projects where there were significant impacts, and those significant impacts were related to the presence of extraordinary circumstances. And that's a very important part of the categorical exclusion is that, yes, it's a procedural mechanism for assuming if you have a project of a certain size that occurs on certain forests that are more likely to have forest fires and have a need for these types of projects, the Forest Service does take a look through the lens of kind of a safety valve of are there extraordinary circumstances. And if there are, then whether it's resource-related extraordinary circumstances, which could also include, you know, perhaps a cumulative impact on a particular resource, then they kick it into a different level of NEPA analysis. Counsel, I have absolutely no idea of how I am to be persuaded. I looked at 250 through 59, and the only thing that seems to be really relevant to what you've been asked about is actually at page 259. But as Judge Thomas points out, it's kind of a conclusory paragraph. And then I look at the spreadsheet that fills a whole lot of volume 4, and, frankly, I have no idea what it means. NFS and ALA, CONICU, 13D, AL, Covington, 1015, 1999, 753, Byrne, MEC, 753. I have the faintest idea why anything is demonstrated. I just don't know what you're saying. If you – I could give you – to look at the spreadsheet and understand it more easily, it's a lot easier to look at it when you're looking at it on a computer than when you've printed it out because it is a very, very large piece of data. I don't actually have access to the Department of Justice computers or the Forest Service computers. No, this is on a public website. I don't want to look at the website. I want to look at the excerpts of record and know exactly how I'm to understand the case. Well, if you want what you should look at it. I don't think I'm supposed to be browsing around on public websites. I'm just saying that if you wanted to look at it in a more user-friendly way than when it's been printed out in the excerpts because it just has – It's just a bunch of abbreviations. But the most important part of that particular spreadsheet is the 30 data points that the Forest Service looked at in each project. And those you can see at excerpt of record 740, 818, and 958. But if I – just stand up for a second. If I understand what you're saying and what I thought to understand the record, what the Forest Service did was to look and try to find within a range of these types of projects generally don't cause problems, to put it in a very, very generic way. But I don't see anything that says that cumulatively, what's the cumulative impact if we apply this nationwide? In other words, it's a project-by-project analysis, saying typically these projects don't cause problems. What I don't see in here, and maybe you can point it to me, is if we adopt this CE, if we adopt this categorical exclusion, and every single project that every time that we fit this thing, it goes through, that's implemented, comes to pass, what's going to be the cumulative impact on the resource nationally? Now, I think your position may be you don't have to do it, but I think the honest answer, and this is what I need from you, is that's not done here, right? There is not a nationwide cumulative impacts analysis done for this procedural mechanism that was created as the CEQ regulations. And as CEQ itself has said, when you have been implementing projects and you have FONSI after FONSI after FONSI, what CEQ has said is, look and see, is there some way you can streamline this? Because NEPA, one of its purposes is not to just have paperwork for paperwork's specific, but one way that you get at the cumulative impacts analysis that you are concerned about, Judge Thomas, is that this extraordinary circumstances analysis that has to occur with every proposed action. And where you are looking and you see, oh, there's another project here, there's another project there, or these projects look to have a cumulative impact on a particular watershed, or this type of mastication may have an impact on some other resource, that's when the agency says, we need to do an environmental assessment, they can do an environmental assessment and may find that they need a new environmental impact statement. That's where the meaningful analysis of cumulative impacts happens, because you already have a programmatic NEPA document for the forest plan that anticipates that hazardous fuels projects will go forward. So there is NEPA on a forest-by-forest basis about, they assume that there will be so many projects that will go forward with prescribed burning or thinning, et cetera. And that's done at a macro level at the forest plan level. But to do it nationwide, it's so speculative. It's a pre-portant copy. And why did you say that the determination, that the Forest Service reasonably determined that there were no cumulative impacts? Because I think what you started to say, I think what your position was below was, we don't need to do it. And therefore, it's not a problem. I mean, I apologize if the brief can be read to suggest that we did a nationwide analysis. What we were trying to get across is that the requirement to promulgate a categorical exclusion requires that you demonstrate that the category of actions have neither an individual or typically cumulative impact. See, but there's the problem with this, I think. I mean, and you said that the service reasonably determined the fuel CE will not lead to cumulatively significant impacts. But that's not what the service did. The service doesn't say this will not lead to cumulatively significant impacts. What it said was, we're defining a range of data and we're taking these typical, if it's applied typically, it won't. That's right. But actually, that's what you said, and I understand that. But that's not really what's said in here. In where? And I'm talking about 55 through 59 of the excerpts. There's not really a statement that says, no, we can reasonably project that there won't be any cumulative nationwide impacts, is there? There's no analysis that says we've, even if every project goes forward under this CE, there are not going to be cumulatively significant impacts. Well, that's not what the categorical exclusion regulation requires. No, I understand your argument that you, I mean, I understand your position that you don't need to do it. But in your brief you said you did it. No, and I don't, I think that it may be inartfully saying what the Forest Service did, which is found that these category of actions, which is what the categorical exclusion regulation requires, are a category which do not individually or have an individual or cumulative significant effects. That's what the Forest Service looked at, because that's what the cumulative impact regulation, I mean, excuse me, the categorical exclusion regulation required. I certainly did not mean to suggest, and it's not our position, that the Forest Service did a nationwide cumulative impacts analysis. Well, then what is the support? I'm looking now at 259, which is page 10 of the document. It says the agencies expect that these, I'm sorry, accordingly the agencies conclude that the categories of actions identified in the Federal Register will not individually or cumulatively have significant effects on the human environment. This is based. But, I mean, you see that statement. Yes. What's the basis in this record for saying it will have no cumulative effects on the environment? It was the Forest Service and the Department of the Interior, the land managers' expertise in implementing these projects and then actually going back and revalidating what they had seen the first time around. What does it say that in terms of a cumulative impacts analysis in this report? Where does it say that that's what the land managers did? If you go back to. . . I understand what the land managers did. We may not want to take things just on trust. We may want to be able to look for ourselves. Well, this is not just described in this synthesis report, but in the actual Federal Register notice for the categorical exclusion and for the proposed categorical exclusion. And, again, in the final categorical exclusion, the Forest Service goes through the fact that these are people, interdisciplinary teams of the experts who implement these projects. A lot of words to say these guys know a lot. Trust them. Can you give us any more? Because the Forest Service does, is entitled to rely on the expertise of its own experts, and that they are, in the Forest Service, is entitled to deference to its methodology. Frankly, I do think these guys know a lot, and I'm inclined to trust them. But I'd like to know if there's something more in the record. I'm trying to. . . I'm struggling with what more we need. We have an agency that looked at. . . Let's say you don't need it. Let's say it's none of our business. Still, it would be nice to have it. Is it there? I just want to know exactly what you want to know is there. I'm sorry. I think we've tried as hard as we could to make it clear. Well, I do think that the record is quite clear about two things, that the Forest Service did a large data call, which the Council on Environmental Quality said went above and beyond, and the Council of Environmental Quality signed off on. The Forest Service looked at every single project it had implemented, hazardous fuels projects, for two full years, and found there were only 12 that had significant impacts, and it defined the parameters of its categorical exclusion to ensure that it wasn't going to sweep in things that would cause those significant impacts. And more importantly, to get at the questions of cumulative impacts, impacts on resources, the Forest Service takes a look at every single project. It does scoping on every project, and it looks to see if there are extraordinary circumstances, and it is the extraordinary circumstances lens that catches these types of problems. I would cite the court to the 10th Circuit's decision in Utah Environmental Congress. It's a decision that talks about exactly this and explains why it is that the extraordinary circumstances lens is the appropriate place for cumulative impacts of categorically excluded projects to be looked at, and the site on that is 443 F3rd 732, and it's at page 741. So I think what you're saying is the Forest Service would like to wait until it's actually going to apply the CE, and at that time make a determination whether extraordinary circumstances exist. And if they do not, then that would be a determination that there was no cumulative impact, I guess. That's right. At that time. It's really not so much applying the CE. The Forest Service has a proposal to perhaps do a prescribed burn and some thinning or mastication to get rid of some fuels. And they say, let me see, how many acres is this? What's the nature of this? It looks like it could, is it in a particular forest with particular risks? Is it in the wild and urban interface? And they say it looks like it could meet the categorical exclusion. And your opposition says you should consider that now, and your answer, I think, is, well, we don't know how we're going to use it right now. That's right. We'll have to wait until the circumstances arise, and then we'll look at it. Well, it's a project by, I mean, the Forest Service doesn't know right now every project that might or might not fall within the parameters of the categorical exclusion. So with each project, though, it looks to see, do you meet the box that we created here? And if you don't, then you go right into environmental assessment or environmental impact statement. If you look like you meet it, they still look again and say, well, are there extraordinary circumstances? And I would ask the court to look at the decision notices and the biological assessments and biological evaluations for the four projects that they actually challenged here. I mean, there are 60 pages on average of analysis by the Forest Service on categorically excluded projects discussing impacts on wildlife and other things, including cumulative impacts. Well, let me ask you, this is sort of an absurd hypothetical, but I want to see how the analysis plays out. I mean, let's just say that the Forest Service had done something completely unreasonable and said, okay, we're going to categorical exclusion applied to 5 million acres plus. I gather your position was you don't have to do a cumulative impacts analysis even for the CE. You still have to go on a project-by-project basis, even though it would take down, obviously, you know, forests. It could take down an entire forest. It would be minuscule in Alaska, but, you know, it would wipe out a forest somewhere else. You said 5 million acres? Or 50 million. Let's say 50 million acres. I think when you're talking about a landscape scale, that way you would have to do some analysis of whether a project that large would have cumulative impacts. And they looked at these individually to see what types of impacts they had. But I'm saying, I'm talking about the establishment of the criteria that's involved here. I mean, would you say that you're entitled to set whatever upper limit there is without any review because it's cured on a project-by-project basis? I think at a certain point it would just be facially unreasonable, and the hypothetical that you've given would be unreasonable. Right. But how do we analyze that, you see? I mean, we analyze it one of two ways. Either it's not required at all, a cumulative impacts analysis. And that may be fine. But then that means that you're entirely free to set whatever limit you want to on this, which I don't, I just don't think that flies, I don't think it flies under the regulations. Or two, that really you do need to do some cumulative impacts analysis. It doesn't need to be an EA. It doesn't need to be an EIS. But maybe you need to do some cumulative impacts analysis when you promulgate the nationwide criteria. And if that's the case, I don't see a cumulative impacts analysis here that would probably fall within that definition. And analytically it makes it difficult, because if this record isn't sufficient to support that, that leads us to one conclusion. If we say it's not required at all, that we don't even need to talk about it, then that means that you are free pretty much to set an upper limit that could end up to be kind of absurd. I think that that limit would have to be supported by the record. And here the limit that is set is supported by the record because it was based upon the very types of projects that had been found not to have impacts cumulatively or otherwise. That's how it was drawn. And there is record evidence to support the parameters that were chosen. Sure. There is the 2,500 projects that the Forest Service looked at, and they went back on the ground, did observations of the actual impacts of those projects. Some, I think it was 1,000. Okay. When I said where, I just meant give me a page where I can say we looked at these 2,500 projects and here's our judgment and here's why. If you look at the excerpts of record at 253, it breaks down some of the projects are 2,840 projects, 1,902 were prescribed burns, 853 were mechanical. Out of the 2,559 projects that the Forest Service pulled it down to, 28 were done with environmental impact statements, 1430. It just says that they reviewed a lot. It doesn't say what they found. This is, if you continue, Your Honor, it discusses the 28 environmental impact statements, 1434 EAs, 1097 categorical exclusions, and describes the fact that only 12 of the 2,559 projects that were reviewed actually contained any prediction of significant impacts. But where's the cumulative impact analysis in any of that? You see, that's the problem I have. I understand that they're saying individually these haven't had problems, but there's no finding I can see that they don't have cumulative impacts. But, Your Honor, if they were categorically excluded, what they went back to look at is did they do that right? Was that a correct? They went back and did monitoring of their use of a prior categorical exclusion to do these types of projects, and their environmental assessments and findings of no significant impact, which themselves would have encompassed a finding that there were no cumulative impacts. So the Forest Service went back to find out whether their predictions, and NEPA is a prediction statute, whether they predicted correctly. And where they found that, in fact, they did predict correctly, they extrapolated from those predictions to say, these are the types of projects that we, I think, can identify in most circumstances will not have individual or cumulative impacts. The CEQ regulations. I understand your argument, but that's not what it says in here. And that's what we have to rely on. It doesn't say we did that. It just says we looked at data. And the methodology, at least from what I read, talks about whether they looked at that individual project. It doesn't say cumulative impacts anywhere. They draw that conclusion. I know it's your position you don't need to, but then you kind of keep shifting and say, yes, they did do a cumulative impacts analysis in each of these, and they correlated them. I don't see that. Well, no, if you do an environmental assessment and a finding of no significant impact, and also if you look at the record here, the decision notices and the BABEs, they also discuss cumulative impacts. But what they did is they truthed those predictions. They said we thought there wouldn't be any impacts, cumulative or otherwise, because we issued an environmental assessment and finding of no significant impact, or we let this project go forward under a categorical exclusion. We're going to go ground truth and find out whether there were any impacts, and that would include cumulative. It may not say, oh, and we looked to see if there were cumulative, but that's what they were doing. They were ground truthing predictions that they had made, and they found that only 12 projects had any significant impacts at all, and those 12 projects had, I think all 12, had the presence of a threatened or endangered or sensitive species. And that was something that would pull them out from the categorical exclusion anyway because there would be an extraordinary circumstance that was impacted in a significant way. Counsel, we are way over our time. Unless my colleagues have a different question. No, no. My question took you over time, so. Thank you, Your Honor. This is a tough case, and you've both done very good work, and it's really hard, and we appreciate your arguments. You've got a little time now. A little time. A little time. I just wanted to address two points on rebuttal, if I could. Number one, the opposing counsel agrees that they have not done a nationwide cumulative impacts analysis, that they have only they only have the data with no analysis, and they've made two arguments about why that should be excused. Number one, they said that they have an extraordinary circumstances provision and will do that analysis later. There is a major problem with that argument. Number one, a categorical exclusion is defined to be a category of. How do you do the analysis when you don't know what projects they're going to do? I mean, cumulative analysis here is cumulative analysis of a rule. It's as though in 1938 when the Federal Rules of Civil Procedure were adopted, there were to be a cumulative analysis of the sorts of lawsuits that would be filed. Who knew? It seems like you could do a cumulative analysis once they say we're going to burn acres in this way and that way and these kind of forests. How do you do a cumulative analysis of a rule? In this case, they could have done a cumulative. They could have looked at the collective impact of all of the projects in the data call. But they don't know what projects there are yet. There was 2,500 projects in the data call. They could have done an analysis of those projects, a cumulative impacts analysis of the projects in the data call. You mean the past projects? The ones in the data call. The 2,500. Those are all ones that are already over, right? Correct. They're not the ones that the categorical exclusion will affect. They were the ones that the agency reviewed in order to promulgate the categorical exclusion. Hold on. I don't want to lose my understanding. Are the projects that you say they could have done a cumulative analysis of projects that would be performed under the categorical exclusion, or are the projects that you say they should have done a cumulative analysis on projects that have already taken place and are not going to be affected by the categorical exclusion? I would give you an answer in two parts. Number one, initially the agency should have done a cumulative impacts analysis of the 2,500 projects that were reviewed in the data call. Now that the FUEL-C has been in place for a number of years, I would say that the cumulative impacts analysis should include the projects that have been implemented under that FUEL-CE. How are they to have done the cumulative effect analysis in the first instance? All they have are these projects that they've had these burns. What methodology do you think they should have employed? I just wanted to clarify. They had burns and commercial logging projects. Sure. That's right. By saying burns, I didn't mean to exclude the commercial logging. Just to give one example, Sierra Nevada Forest Protection Campaign, one of the appellants in this action, in their comments, what they did is they did an analysis of implementation of the FUEL-CE on one national forest, which was the El Dorado National Forest. And they figured out that over seven years, 11,000 logging trucks of timber would come out. They looked at how the forest would be fragmented and what impact that would have on wildlife. For that case, they looked at one national forest. Now, my opposing counsel says it's nationwide. It's too speculative to do a nationwide analysis. But there is some other level of analysis between, I mean, there is some cumulative analysis that could have been done. They could have looked at the impact of implementing this on one national forest in one given state, in the Sierra Nevadas, in one given ecosystem region, rather than saying, well, it's too large and we're not going to look at any of it. And I would also like to say that getting back to the extraordinary circumstances provision, what the agency is claiming is that there are they're going to do this analysis later. They're going to do this analysis during the extraordinary circumstances provision. But the major flaw with that is, is that the agency has to determine before they promulgate a categorical exclusion that it will have no significant impacts on the environment. Let's say a totally different kind of rule. Let's say the agency said everything has to be filed in 14-point type. Obviously, you couldn't do a cumulative analysis. You have no idea how that will affect anything. It's purely procedure. Now, at the other end, the agency says every 10,000 acres of unbroken forest shall be broken by a fire break. Then you clearly have something that the agency is going to do in the woods, and you need a cumulative analysis. This isn't quite the 14-point type rule, but I don't understand why it isn't closer to the 14-point type rule than the fire break for every 10,000 acres of forest rule that I hypothesized. And the reason I'm asking you that is when we ask about what the cumulative analysis would be of, you talk about the past and not the future. You talk about pre-categorical exclusion activity rather than post-categorical exclusion activity. So I'm having trouble attaching the notion of doing a cumulative analysis to what you would do it on. Your Honor, I would say that in this case it's closer to the latter analogy, the one where you have a fire break in the forest. And that's because we have 2,500 projects that the agency is basing their decision on, 2,500 on-the-ground physical projects, and they're saying this is the basis for formulating our categorical exclusion. These tangible 2,500 projects, the agency could have looked at the cumulative impacts of those 2,500 projects, and that makes it more analogous to the second case, to the second analogy. And my point, again, with the extraordinary circumstances provision, is what the agency has done is they have actually taken, and NEPA's implementing regulations list different criteria that an agency should consider in a significance analysis. And those are listed at 40 CFR 1508.27. What the agency has done is they have moved those criteria of significance and moved those to the extraordinary circumstances provision. What the agency, they cannot do that. They cannot put off until tomorrow what they're required to do today. And this was actually held by this court in Sierra Club v. EPA. And that's what the agency is saying, oh, well, we're going to do it later. But isn't that consistent with the way the laws change on programmatic analysis of forests versus site-by-site? I mean, it used to be that you'd take a forest plan and you'd do EIS and litigate those issues then, but that changed. The idea was that finally you have to analyze this on a program-by-program basis, right? But in this case — I mean, that's a whole theory that the Supreme Court adopted a few years ago. In this case, before an agency can promulgate a categorical exclusion, it has to meet the first hurdle, the first affirmative obligation they must meet. They have to determine that this category of actions is going to have no significant impact. What is the program that would or would not have? Suppose I wanted to say they're wrong, it'll have a terrible cumulative impact, or they're right, it won't have much of a cumulative impact. I don't see how I could say either one. You're right, Your Honor. They've done no analysis. But I don't see how anyone could say either one because you don't know what they're going to do. I don't know if they're going to cut any fire breaks, if that's a road that you put through the forest to prevent the fire from jumping over the trees. I don't know if they're going to clear out any dead brush. I don't know what they're going to do. They don't know what they're going to do. They haven't decided what to do. So how do you do a cumulative impact where there's no projects or project to do an impact? And what you've told me is, well, look at what they've done in the past. And they say, we looked at what we did in the past, but that's still not the cumulative impact of the rule we adopted after we did that stuff in the past. It's not a cumulative impact of what we're going to do in the future because there is no project for the future. Your Honor, a cumulative impact analysis can never be done for the future, for what's going to happen, what they've done. And that's why in this case there's two different places that they should have done the analysis. I say that before they promulgated the Fuel C, they should have looked at the cumulative impacts of all 2,500 projects. And since this has been implemented for over five years, the agency has a plethora of projects that they could consider. But cumulative impact analysis is supposed to be of the future, not the past. Actually, the definition of a cumulative impact is defined as the past, present, and reasonably foreseeable future projects. And that's defined at 40 CFR. But what that means is not quite what you're implying. What it means is you look at them all, what you've done and what you're going to do, and you put them together and you say, well, even though some of them haven't amounted to much, when you put it all together, it has a really significant environmental impact. But I don't know what to put together because they don't know what they're going to do. They should have put something. They should have put it together. They should have put something together. In this case, they didn't put any of the projects together. Just to interrupt for a second, there are different gradients of cumulative impact analysis. You've got the environmental impact statement, for example, perhaps in the far end, environmental assessment, and then just some analysis of cumulative impacts. And I know you've argued that they need to do an EA or an EIS with this CE.  The issue is that they have to do some sort of cumulative impact analysis, even though it's not. I guess we have to decide whether no impact analysis, whether the statute as applied is no analysis, some analysis, or full-blown EA and EIS. Isn't that kind of where we are on this? Yeah. That's just a question of law, basically, isn't it? And right now, they're saying data with no analysis is sufficient, and that is not sufficient. And unless you have any further questions. Thank you, counsel. Again, thanks for your argument, counsel. You've done a good job. Yes. Thank you both. Take care. We're totally confused at this point. You've succeeded both of you. CR Club v. Bosworth is submitted. We're recessed for the day. adjourned for the day.  adjourned for the day. adjourned for the day.
judges: Thompson, Kleinfeld, Thomas